*Leave to file is granted —*
*Judge Walton*
*7/5/17*

Rayonna Miller

17-389

On September 9, 2016 I was working a **11:30/8pm** shift for (Downtown DC BID). Around **7:10pm** My supervisor (Michael Creed) called me back to the office along with 3 other employees' (David Hall, Rayshawn Boseman, Vernon Richardson) to update our contact information. Upon my arrival, my supervisor Michael Creed informed me and my other co-workers to go upstairs in the breakroom and he will bring the papers upstairs. He gave me my packet with my name on it and I begin to read it because it was more than a contact information update. As I was looking through the packet I noticed that it was a policy and procedure paper attached to the packet that was dated for July 16, 2016. I informed my supervisor that the date on my paper was dated for **July 16** and today is the **9th of September** I was just being informed about the new changes and being provided to me that day. I asked him if he could fix the date so that I can sign. Mr. Creed went downstairs and informed me that he is aware of the paper and that I can speak with the deputy director David Pollard that following **Tuesday** after I sign the document. I mentioned to the supervisor that I didn't feel comfortable signing the document due to the incorrect date and I would like to speak with Mr. Pollard to get more clarification before I sign. Mr. Creed stated ok and collected my packet. Once I gave him my packet the three other individuals decided not to sign the packet because they had the same concerns. The next two following day's I was allowed to work and no one said anything to me regarding the papers nor was I suspended. That **Monday** I was I was off, Tuesday September 13, 2016 I arrived to work as normal on time I didn't hear anything regarding the papers. Mr. Creed gave me my assignment and I reported to 12&F Street post. That evening I was terminated around or about **5:15pm**. The employee stated that I was encourage my co-workers to follow my lead and not to sign the documents and insubordination. I didn't encourage anyone to follow my lead. They express their own concerns with the supervisor. The three individual also testified in the administrative court on my behalf verifying what happen, the also sign and certified letters on my behalf. On **December, the 9th** Judge James C. Harmon, Jr. gave his final order and ruled in my favor. He stated that the employer has not presented sufficient evidence to demonstrate that I committed a disqualifying rule violation or engage in "gross insubordination" or disruptive behavior at the work place on 9/9/16. He also mentioned that the employer presented no evidence that I refused to obey any order issued by a superior as it related directly to performing my duties. He mentioned with respect to signing the forms that Mr. Creed had given me and my coworkers, he finds that I had the right to question an incorrect date on the form related to policies and procedures prior to signing all the forms and indeed the coworkers had the same concern as well.

JUN 2 9 2017

26 2017

CLERK
US DISTRICT &
BANKRUPTCY COURTS

2017 JUN 23 P 7:43

RECEIVED

September 13, 2016

To: Rayonna Miller

From: David Pollar, Deputy Director of Operations

Re: Termination

Cc: Eileen Andary; Chief Administrative Officer

Ms Miller, on Friday evening September 9th, 2016 supervisor Michael Creed held an on-duty team meeting at which you and others were present. In the meeting, he distributed a packet of routine forms and procedures, and instructed all present to complete the forms and acknowledge receipt of the procedures by signing them.

You repeatedly stated your refusal to complete or acknowledge any of the paperwork, and argued extensively with Mr. Creed about various aspects of it. In addition, in the presence of Mr. Creed and another supervisor, you addressed your teammates directly and repeatedly, telling them publicly not to comply with the supervisor's instructions. You were disruptive and making vocal accusations such as "he's setting you up" and "they've got you fucked up...don't do it, don't sign." This level of insubordination, disruption, and refusal to comply with reasonable instructions is unacceptable in the workplace.

On July 27th, 2016 you had received a memo from Chief Administrative Officer Eileen Andary that referenced a similar incident with another supervisor, and warned in writing that any additional such violation would make you subject to disciplinary action, up to and including termination.

Just two days before Friday's incident, on September 7, 2016, Ms. Andary and I met with you in person to discuss a series of other recent negative, inappropriate written comments and interactions initiated by you. We warned you clearly and directly in that meeting that no further such behavior would be tolerated.

Your employment with this organization is therefore terminated, effective immediately.

---

*Handwritten response:*

Mr. Creed did not held a team meeting he gave up our packet individually there was a Open discussion about the papers that was in the packet. Mr. Creed was not present during the discussion. I did not refuse any paperwork I actually asked him if he could change the date Because the packet was dated for July I didn't argue with anyone nor did I had a discussion. I did not curse at anyone. these Statement and accusations are lies by the company. Also I would to follow op!

Received by: Rayonna Miller    date: 9/13/16

To whom it may concern on 9/(?)/16. Rayonna Miller did not argue with our supervisor Mr. Creed. Nor did she address me or our other co-workers tell us not to comply with the supervisor instructions. She did not refuse to complete or acknowledge any of the paper work. She stated she do not feel comfortable signing something that was dated for july and its September, who do she speak with to get more clarification. These claims of being argumentative with the supervisor, disruptive, refusal to comply with instructions, and making false accusations did not happen in my presence.

David Hall



DISTRICT OF COLUMBIA: SS
SUBSCRIBED AND SWORN TO BEFORE ME
THIS ___ DAY OF _____, ____.
_____
NOTARY PUBLIC
My Commission Expires _____

To whom it may concern on 9/9/16. Rayonna Miller did not argue with our supervisor Mr. Creed. Nor did she address me or our other co-workers tell us not to comply with the supervisor instructions. She did not refuse to complete or acknowledge any of the paper work. She stated she do not feel comfortable signing something that was dated for july and its September, who do she speak with to get more clarification. These claims of being argumentative with the supervisor, disruptive, refusal to comply with instructions, and making false accusations did not happen in my presence.

Vernon Richardson Jr.   09/27/16

202-749-6666

District of Columbia: SS
Subscribed and Sworn to before me
this ___ day of _____

Notary Public, D.C.
My commission expires_____

**TOSHA ANN SHORT**
**DISTRICT OF COLUMBIA NOTARY PUBLIC**
**MY COMMISSION EXPIRES AUGUST 31, 2020**

RECEIVED 2017 JUN 23 P 7:43 CLERK US DISTRICT & BANKRUPTCY COURTS

To whom it may concern on 9/9 16. Rayonna Miller did not argue with our supervisor Mr. Creed. Nor did she address me or our other co-workers tell us not to comply with the supervisor instructions. She did not refuse to complete or acknowledge any of the paper work. She stated she do not feel comfortable signing something that was dated for july and its September, who do she speak with to get more clarification. These claims of being argumentative with the supervisor, disruptive, refusal to comply with instructions, and making false accusations did not happen in my presence.

9/27/16
(202) 360-5368

District of Columbia: SS
Subscribed and Sworn to before me
this 27 day of Sept, 2016
_____
Notary Public, D.C.
My commission expires _____

TOSHA ANN SHORT
DISTRICT OF COLUMBIA NOTARY PUBLIC
MY COMMISSION EXPIRES AUGUST 31, 2020

RECEIVED 2017 JUN 23 P 7:43
CLERK US DISTRICT & BANKRUPTCY COURTS

Case No.: 2016-DOES-01814

The District of Columbia Court of Appeals ("Court of Appeals") has held that a finding of either gross misconduct or simple misconduct requires proof that Claimant's acts were intentional.[16]

If the basis for disqualification from benefits under D.C. Official Code § 51-110(b) is a violation of the employer's rules, the following criteria must be met to uphold the disqualification:

> (a) That the existence of the employer's rule was known to the employee;
> (b) That the employer's rule is reasonable; and
> (c) That the employer's rule is consistently enforced by the employer.

7 DCMR 312.7; *Hegwood v. Chinatown CVS, Inc.*, 954 A.2d 410, 412 (D.C. 2008); *Jones v. D.C. Dep't of Emp't Servs.*, 558 A.2d 341, 342-43 (D.C. 1989).

In this case, Employer presented evidence to demonstrate that it has a policy which provides that an employee may be disciplined, up to and including, being discharged for engaging in "[g]ross insubordination, or refusal to perform reasonable duties as directed." *See* Exhibit 100. Claimant was aware of the policy, as she acknowledged receiving the Employee Handbook which contains the policy on July 8, 2015. *Id.* The policy is reasonable, as required by 7 DCMR 314.7 (a), and is consistently enforced by Employer, as required by 7 DCMR 314.7 (c)

Here, however, Employer has not presented sufficient evidence to demonstrate that Claimant committed a disqualifying rule violation or engaged in "gross insubordination" or disruptive behavior at the workplace on September 9, 2016, which was the triggering event that caused Employer to fire her.

---

[16] *See Bowman-Cook v. Washington Metro. Area Transit Auth.*, 16 A.3d 130, 135 (D.C. 2011) (any holding of simple misconduct requires that "the employee *intentionally* disregarded the employer's expectations for performance.") (emphasis in original)); *Capitol Entm't Servs. v. McCormick*, 25 A.3d 19, 26 (D.C. 2011) ("intentionality or conscious disregard amounting to recklessness is implicit in the examples of misconduct" in the DOES regulations).

RECEIVED 2017 JUN 23 P [time] CLERK US DISTRICT & BANKRUPTCY COURTS

In this jurisdiction, the term insubordination means the refusal to obey some order which a superior is entitled to give and entitled to have obeyed.[17] Insubordination is a specific example of gross misconduct under the Act and its governing regulations.[18]

Here, Employer presented no evidence that Claimant refused to obey any order issued by a superior as it related directly to performing her duties as a Safety and Hospitality Worker. With respect to signing the forms that Mr. Creed had given Claimant and her co-workers, I find that Claimant had a right to question an incorrect date on the form relating to policies and procedures prior to signing all of the forms in the packet. Indeed, Claimant's co-workers had the same concerns about signing the forms. Further, Employer presented no evidence that Claimant indicated that she would never sign the documents. Accordingly, I do not find that Claimant engaged in insubordination, as that term is used in the context of the Act and its governing rules and regulations. Further, I note that the evidence shows that on Monday, September 12, 2016, Claimant's co-workers Rayshawn Boseman and Vernon Richardson, Jr. met with Deputy Director of Operations Mr. Pollard to discuss why they had not signed the forms. The evidence further shows that after meeting with Mr. Pollard, Claimant's co-workers signed the forms. However, the very next day, September 13, 2016, Claimant met with Mr. Pollard and Safety Supervisor Michael Creed, and was fired for, among other things, not signing the forms.

Lastly, in this case, Employer relied on a written statement from Maintenance Supervisor Ethel Frye stating, among other things, that she overheard Claimant telling her co-workers not to sign forms that Mr. Creed had given them and also using profanity. However, Claimant testified credibly at the hearing that she did not advise any of her co-workers not to sign the documents that Mr. Creed had provided them. Further, Claimant's co-workers also testified credibly at the hearing that Claimant did not advise them not to sign the paperwork, and that they did not hear Claimant use any profanity while discussing whether or not to sign the forms provided to them by Mr. Creed.

---

[17] See *Raphael v Cyiri*, 740 A.2d 935, 946 (D.C. 1999); See *Phillips v. General Services Admin.*, 878 F.2d 370, 373 (Fed. Cir 1989) ("Insubordination by an employee is a willful and intentional refusal to obey an authorized order of a superior . . . which the [superior] is entitled to have obeyed").
[18] 7 DCMR 312.4(f).

RECEIVED 2023 P 4:43 CLERK US DISTRICT & BANKRUPTCY COURTS

Case No.: 2016-DOES-01814

Employer has not presented evidence to show that Claimant willfully, deliberately, or intentionally disregarded Employer's rules, its interests, or expectations for this administrative court to find that Claimant committed an act or acts that constituted either work-related "gross" or "simple" misconduct.[19] Further, Employer has not presented evidence to show that Claimant's behavior on September 9, 2016, seriously or adversely impacted its business operations or adversely affected a material interest.[20]

In concluding that Employer has failed to present sufficient evidence to prove that Claimant committed disqualifying misconduct, I am mindful that the Act is a remedial statute that should be construed liberally, whenever appropriate, to accomplish the legislative objective of minimizing the economic burden of unemployment.[21]

Employer' decision to fire Claimant might have been appropriate as a business matter, but "[t]he fact that an employee's discharge appears reasonable from the employer's perspective does not necessarily mean that the employee engaged in misconduct."[22]

Because Employer has not met its burden of proving by a preponderance of the evidence that Claimant committed either gross misconduct or simple misconduct, the Claims Examiner's Determination is affirmed. D.C. Official Code §§ 51-110(b) and 51-111(e). Claimant remains qualified to receive benefits.

## V.   ORDER

Based upon the foregoing and the record in this matter, it is:

---

[19] See Hamilton v. Hojeij Branded Food, Inc., 41 A.3d 464, 476 (D.C. 2012); see also Bowman-Cook, 15 A.3d at 135 "implicit in [the] definition of misconduct is that the employee intentionally disregarded the employer's expectations for performance.") (emphasis original, quoting Washington Times v D.C. Dep't of Emp't Servs., 724 A.2d 1212, 1217–18 (D.C. 1999); and Capitol Ent'n't Servs., Inc., at 27 ("[A]n employee's ordinary negligence in failing to perform work in accordance with the employer's standards, rules, or expectations is not misconduct, gross or otherwise . . . .").
[20] See Odeniran, 985 A.2d at 42'; 7 DCMR 312.5.
[21] See Morris v. U.S. EPA, 975 A.2d 176, 181 (D.C. 2009); Green v. D.C. Dep't of Emp't Servs., 499 A.2d 870, 875 (D.C. 1985).
[22] See Washington Times, 724 A.2d 1212, 1217–18 (D.C. 1999) (citing Cruz v. D.C. Dep't of Emp't Servs., 633 A.2d 66, 69 (D.C. 1993).

Case No.: 2016-DOES-01814

**ORDERED**, that the Claims Examiner's Determination is **AFFIRMED**; and it is further

**ORDERED**, that Claimant remains **QUALIFIED** to receive unemployment compensation benefits; and it is further

**ORDERED**, that the appeal rights of any person aggrieved by this Order are stated below.

**DATED:** December 9, 2016

_____
James C. Harmon, Jr.
Administrative Law Judge

RECEIVED 2017 JUN 23 P 4 43 CLERK US DISTRICT & BANKRUPTCY COURTS